In re Marion M. HARRELL, SS#: 243–66–8227 Lucille M. Harrell, SS#: 244–62–5688 d/b/a Harrell's Seed Farms, Debtors.

Bankruptcy No. S–84–00100–2.

United States Bankruptcy Court, E.D. North Carolina.

Nov. 19, 1985.

Trawick H. Stubbs, Jr., Stubbs, Perdue, Chesnutt & Wheeler, P.A., New Bern, N.C., for debtors.

C. Everett Thompson, Trimpi, Thompson & Nash, Elizabeth City, N.C., for W.R. Harrell.

Stephen L. Beaman, Stephen L. Beaman, P.A., Wilson, N.C., for trustee.

## MEMORANDUM OPINION AND ORDER

A. THOMAS SMALL, Bankruptcy Judge.

A hearing was held in Raleigh, North Carolina on August 19, 1985, to consider the trustee's July 15, 1985, Motion for Order Authorizing Partial Distribution and the August 2, 1985, objection to the trustee's motion filed by C. Everett Thompson, attorney for W.R. Harrell (also known as W. Rufus Harrell). The attorney for the trustee, Stephen L. Beaman, appeared at the hearing and indicated that the facts are not disputed in this proceeding, and the parties would submit briefs to the court arguing their positions rather than present oral arguments.

Mr. W.R. Harrell asserts a $12,073.79 statutory landlord's lien on the $36,220.18 of proceeds realized from sale of the debtors' 1984 fall soybean crop which the trustee now seeks to distribute. The trustee argues that Mr. Harrell's purported lien should be avoided pursuant 11 U.S.C. § 545(3) as an avoidable lien for rent.

This bankruptcy court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A), (K), and (O), which this court may hear and determine.

## FACTS

The debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code on January 18, 1984, in an attempt to reorganize their struggling farming operation. As part of their reorganization, the debtors filed a March 19, 1984, Application to Finance 1984 Crop. The debtors' application disclosed, among other things, that the debtors' planned to lease 250 acres of farmland from Mr. W.R. Harrell, Marion M. Harrell's uncle, on which the debtors would grow soybeans, and for which W.R. Harrell agreed to furnish credit for fertilizer, seed, chemicals, and other supplies. On May 4, 1984, the court entered an Order Authorizing Crop Financing which granted liens on the debtors' crops to various creditors including a second lien to W.R. Harrell on the debtors' 1984 fall soybean crop to the extent W.R. Harrell furnished credit for seed, chemicals, fertilizer, and other supplies for cultivation of the crop, but not to exceed $15,000. Mr. Harrell agreed to lease 250 acres of farmland to the debtors in return for a one-third share of the crop raised on the land. No mention is made, however, in either the debtors' application or the court's order of a lien for rent in favor of W.R. Harrell for the 250 acres leased to the debtors.

The debtors continued their farming operations and filed a Disclosure Statement on May 29, 1984 (amended on July 25, 1984) which was approved by the court on August 24, 1984. The Disclosure Statement discloses the debtors' rental of 250 acres from W.R. Harrell, but does not mention rental payments to W.R. Harrell or the existence of a landlord's lien on any of the debtors' crops. The parties never executed a written lease agreement covering the subject property. The debtor's plan, filed on June 22, 1984, likewise, did not provide for either a rental payment or the granting of a landlord's lien to W.R. Harrell.

The debtors were unable to effectuate a confirmable Plan of Reorganization, their case was converted to a case under chapter 7 on December 20, 1984, and Stephen L. Beaman was appointed as trustee. There-

after the trustee liquidated the debtors' assets which had not already been sold, including sale of the debtors' 1984 fall soybean crop for $36,220.18. This crop was grown on the 250 acres leased by the debtors from W.R. Harrell.

On June 13, 1985, the court ordered all those claiming an interest in the $36,220.18 of soybean crop proceeds to file a proof of claim with the court so the trustee could determine the claimant's respective rights to the proceeds.

On May 30, 1984, Mr. W. Rufus Harrell, individually and as President of Central Grain Corporation, filed a Claim and Affidavit of W. Rufus Harrell and Central Grain Corporation. W.R. Harrell asserts therein a statutory landlord's lien of $12,073.79 representing one-third of the soybean crop proceeds. Mr. Harrell also asserts, as part of the landlord's lien, that he "paid one third of the expenses of production of [the debtors'] crop individually." Claim and Affidavit ¶ 9. Paragraph 10, however, shows that the *total* value of supplies advanced for production of the crop was $21,017.75. Exhibit "B," attached to the claim, shows that all $21,017.75 of the expenses advanced were advanced by Central Grain Corporation. The portion of supplies or expenses purportedly advanced by W.R. Harrell for production of the crop are not itemized or in any way separately set forth in Mr. Harrell's Claim and Affidavit, and the court finds, therefore, that W.R. Harrell did not individually extend any credit to the debtors for seed, chemicals, fertilizer, or other supplies for the 1984 soybean crop. All advances for such supplies were made by Central Grain Corporation of which W.R. Harrell is President and principal stockholder. See Claim and Affidavit ¶¶ 3, 10, 11, and Exhibit "B."

The statutory landlord's lien on crops for rents and advancements is governed in North Carolina by N.C.GEN.STAT. § 42–15 (1985). Counsel for W.R. Harrell argues that under N.C.GEN.STAT. § 42–15 all crops raised on rental lands are vested in the lessor's possession until rents are paid. Counsel also argues that a landlord's lien is

superior to all other liens. Counsel asserts, therefore, that $12,073.79 should be paid to W.R. Harrell in satisfaction of his landlord's lien.

The trustee asserts that W.R. Harrell's claim represents an unsecured extension of credit under 11 U.S.C. § 364(a), that Mr. Harrell's claim should be treated as if it arose immediately prior to the filing of the debtors' petition under 11 U.S.C. § 348(d), and that W.R. Harrell's statutory lien for rent should be avoided pursuant to 11 U.S.C. § 545(3). Although the trustee asserts that W.R. Harrell's lien should be avoided, he concedes that pursuant to § 348(d) Mr. Harrell should be allowed an 11 U.S.C. § 503(b) administrative expense priority claim for rent.

## DISCUSSION AND CONCLUSIONS

The question before the court is what amount, if any, is W.R. Harrell entitled to from the $36,220.18 of proceeds realized from the sale of the debtors' 1984 fall soybean crop grown on 250 acres of land leased to the debtors by W.R. Harrell. Mr. Harrell has not been paid rent by the debtors, and therefore, now claims $12,073.39 (one-third of the crop proceeds) as rent pursuant to the parties' rental agreement and the statutory landlord's lien of N.C. GEN.STAT. § 42–15. N.C.GEN.STAT. § 42–15 provides that,

> any and all crops raised on ... [lands rented or leased by agreement] shall be deemed and held to be vested in possession of the lessor or his assigns at all times until the rents for said lands are paid....

W.R. Harrell argues that under N.C.GEN. STAT. § 42–15 the debtors' soybean crop is not property of the estate or the debtors, but is instead property of the landlord until rent is paid to the landlord, and that W.R. Harrell, therefore, has a vested right to a one-third share of the crop.

■ The 1984 soybean crop grown on the 250 acres of farmland which the debtors leased from W.R. Harrell is property of the estate under 11 U.S.C. § 541(a). Furthermore, Mr. Harrell's statutory land-

lord's lien for rent may be avoided by the trustee pursuant to 11 U.S.C. § 545(3).

Section 545 of the Bankruptcy Code allows the bankruptcy trustee to avoid the fixing of certain statutory liens in a debtor's case. 11 U.S.C. § 545(3) provides that,

[t]he trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—

. . .

(3) is for rent.

A statutory lien is defined in 11 U.S.C. § 101(39) (now § 101(45)) as a lien,

*arising solely by force of a statute on specified circumstances or conditions,* or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute (emphasis added).

Although W.R. Harrell leased 250 acres of land to the debtors under an oral lease contract, Mr. Harrell seeks payment of his rent by enforcing the statutory landlord's lien of N.C.GEN.STAT. § 42–15, a lien arising solely by force of a statute, and the type of lien specifically addressed in 11 U.S.C. § 545(3).

Other courts which have addressed the attempted enforcement of such a lien have universally held that the lien could be avoided by the trustee under § 545(3). *In re Nordyke,* 43 B.R. 856 (Bankr.D. OR 1984) (farmer's lease); *In re Jam Furniture,* 19 B.R. 578 (Bankr.S.D. FL 1982); *Matter of Allegheny Nursing Services, Inc.,* 17 B.R. 594 (Bankr.W.D. PA 1982); *In re Furniture Discount Stores, Inc.,* 11 B.R. 5 (Bankr.N.D. TX 1980); and *accord, In re Janssen,* 42 B.R. 294 (Bankr.E.D. VA 1984).

The application of 11 U.S.C. § 545(3) to the postpetition lease agreement in this case is no different than if the lease agreement had been entered into prior to the debtors' bankruptcy filing. 11 U.S.C. § 348(d) provides that the claim of W.R. Harrell for rent which arose postpetition but preconversion is deemed to have arisen immediately prior to the filing of the petition. Section 348(d) provides that,

[a] claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112 or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

Section 545(3) clearly provides that the fixing of a statutory lien for rent against property of the debtor may be avoided, and under § 348(d), it matters not whether Mr. Harrell's claim arose after the debtors' petition was filed. Mr. Harrell's statutory landlord's lien for rent may properly be avoided by the trustee under § 545(3).

■ Although the parties did not address the issue, a portion of W.R. Harrell's $12,073.39 claim is for one-third of the credit advanced to the debtors for feed, chemicals, fertilizer, and supplies. See Claim and Affidavit ¶ 9. The court's May 4, 1984, Order Authorizing Crop Financing granted W.R. Harrell a second lien on the soybean crop for amounts advanced for such supplies not to exceed $15,000. Although W.R. Harrell may have originally agreed to furnish a portion of the supplies necessary for production of the debtor's 1984 soybean crop, such amounts are not itemized in W.R. Harrell's Claim and Affidavit. There is no indication of the amount or nature of expenses purportedly advanced by W.R. Harrell other than the bare assertion that he advanced one-third of the total amount. Paragraph 10 of the Claim and Affidavit indicates that "the total expenses advanced for the production of this crop which Central Grain Corporation is entitled to a crop lien is as follows: . . . Supplies advanced with service charge $21,017.75." Exhibit "B" indicates that all of the $21,017.75 of expenses advanced to the debtor were advanced by Central Grain Corporation. The Claim and Affidavit of W. Rufus Harrell and Central Grain Corporation does not support W.R. Harrell's claim that he, individually, extended credit to the debtors for

seed, chemicals, fertilizer, and other supplies for production of the debtors' 1984 fall soybean crop. Accordingly, W.R. Harrell is not entitled to a lien on the soybean crop proceeds for any such extension of credit.

Although W.R. Harrell's claim for rent pursuant to the statutory landlord's lien of N.C.GEN.STAT. § 42–15 must be denied, since the trustee may properly avoid that lien pursuant to 11 U.S.C. § 545(3), and though Mr. Harrell's Claim and Affidavit does not support his secured claim for amounts advanced to the debtors for seed, chemicals, fertilizer and other supplies, the trustee concedes that W.R. Harrell does have an administrative expense priority claim for rent in the amount of $12,073.39 pursuant to 11 U.S.C. §§ 364(a) and 503(b)(1).

The lease agreement between W.R. Harrell and the debtors was an unsecured extension of credit in the ordinary course of the debtors' farming business under § 364(a). Section 364(a) provides that such credit is allowable as a § 503(b)(1) administrative expense. Section 503(b)(1)(A) provides that administrative expenses include, "the actual necessary costs and expenses of preserving the estate...." Contemplated within this phrase are expenses for rent of property which benefits the estate. 3 *Collier on Bankruptcy* ¶ 503.04[1][a][i] at 503–15 (15th ed. 1985). Allowance of such expense for rent would not be affected by 11 U.S.C. § 348(d) since claims specified in § 503(b) are specifically excepted from the operation of § 348(d). Therefore, W.R. Harrell will be allowed an administrative expense priority claim for rent of $12,073.39 pursuant to 11 U.S.C. §§ 364(a) and 503(b)(1)(A). Accordingly,

IT IS HEREBY ORDERED that the trustee's July 15, 1985, Motion for Order Authorizing Partial Distribution, to the extent it denies distribution to the claim of W.R. Harrell for rent based upon the statutory landlord's lien of N.C.GEN.STAT. § 42–15, is ALLOWED; and

IT IS FURTHER ORDERED that W.R. Harrell's August 2, 1985, Objection to Motion for Order Authorizing Partial Distribution is DENIED; and

IT IS FURTHER ORDERED that W.R. Harrell be, and hereby is, allowed an administrative expense priority claim for rent in the amount of $12,073.39 pursuant to 11 U.S.C. §§ 364(a) and 503(b)(1)(A).